IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| BAKER DC, LLC., | : | Case No. 1:17-cv-530 |
| Plaintiff, | : | Judge Susan J. Dlott |
| v. | : | **ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT** |
| R. ALEXANDER ACOSTA, Secretary, United States Department of Labor, *et al.*, | : | |
| Defendants. | : | |

This matter is before the Court on cross motions for summary judgment. Defendants filed a Motion for Summary Judgment, (Doc. 12), which Plaintiff opposed, (Doc. 17). Plaintiff filed a Motion for Summary Judgment, (Doc. 13), which Defendants opposed (Doc. 16). All parties filed replies. (Docs. 18, 19.)

For the reasons set forth below, the Defendants' Motion for Summary Judgment, (Doc. 12), is **DENIED** as to Plaintiff's Fourth Amendment claim and **GRANTED** as to Plaintiff's Paperwork Reduction Act Claim. The Plaintiff's Motion for Summary Judgment, (Doc. 13), is **GRANTED** on the Fourth Amendment claim and **DENIED** on the Paperwork Reduction Act claim.

I. BACKGROUND

A. Facts[1]

The United States Department of Labor, Office of Federal Contractor Compliance Programs ("OFCCP") ensures that covered federal contractors and subcontractors comply with

---
[1] The facts are taken from the ALJ's Recommended Decision and Order Enforcing Onsite Review. (ALJ Decision, Doc. 9-2 at PageID 1440–61.)

1

legal requirements under Executive Order 11246, Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793, and the Vietnam Era Veterans' Readjustment Assistant Act, 38 U.S.C. § 4212, to take affirmative action and not discriminate based on race, color, sex, sexual orientation, gender identity, religion, national origin, disability, or status as a protected veteran. (PageID 1454.) Through its Mega Construction Project ("MCP") program, OFCCP attempts to maximize limited resources by inspecting and reviewing federal and federally-assisted construction contractor and subcontractor compliance on particular projects.[2]

OFCCP gathers "prescheduling information" including information related to "the current projects underway, number of employees, duration of the projects, and other basic information . . . to determine if OFCCP has jurisdiction for scheduling a construction review." (PageID 1449.) Once jurisdiction is confirmed, OFCCP conducts an onsite review, beginning with an entrance conference with a top company official or delegate "to educate the subcontractor on what is expected during the compliance evaluation." (PageID 1448.) OFCCP interviews management personnel, and "[t]hen using a list of current projects where there are employees, OFCCP determines which construction sites to visit to conduct employee interviews." (PageID 1451–52.) OFCCP also requests documents and establishes a date the documents will be submitted. (PageID 1452.)

On September 30, 2014, the General Services Administration awarded Grunley Construction Company a $139 million contract to renovate a building on the St. Elizabeths West Campus in Washington, D.C. (PageID 1442.) OFCCP selected this project as a MCP, and Grunley Construction agreed to participate in OFCCP's MCP program. (*Id.*) For selected MCPs, the prime contractor is always scheduled for a compliance review, and the subcontractors

---

[2] To be selected as a MCP, the project must have a value of at least $25 million and a duration of at least one year. (PageID 1442, fn. 4.)

become eligible for scheduling once they have worked on the MCP for three months. (PageID 1450.) Subcontractors are scheduled for compliance review in the order in which they reach the three month mark "unless [OFCCP] had received credible reports of discrimination, in which case they would move up the list." (PageID 1451.)

At an OFCCP outreach event on February 9, 2015, some individual attendees complained to OFCCP Assistant District Director Tanya Bennett about Baker DC's treatment of African American employees. (PageID 1446.) In addition, one person telephoned Ms. Bennett after the event to make five specific allegations of discrimination, (*id.*), but no formal complaints were filed against Baker DC by any of the oral complainants. (PageID 1451.)

In June and September 2015, Grunley Construction awarded federal subcontracts to Baker DC—a concrete construction contractor—for the St. Elizabeths project for $100,000 and $15 million, respectively. (PageID 1442.) Baker DC began working on the project in November 2015, and reached its three-month date at the end of January 2016. (PageID 1450.)

In February 2016, OFCCP began scheduling compliance reviews for the relevant phase of the St. Elizabeths MCP. (PageID 1444.) OFCCP provided a partially-redacted chart[3] identifying the order in which construction contractors would be eligible for review, as follows:

| # | Contractor | Month Reached 3 Months' Work | Date Scheduled for Review |
|---|---|---|---|
| 1 | Grunley Construction Co., Inc. | Prime Contractor | 2/29/16 |
| 2 | Contractor #2 | May 2015 | 8/1/16 |
| 3 | Contractor #3 | May 2015 | 8/1/16 |
| 4 | Contractor #4 | June 2015 | |
| 5 | Contractor #5 | June 2015 | |
| 6 | Contractor #6 | August 2015 | |
| 7 | Contractor #7 | August 2015 | |
| 8 | Contractor #8 | January 2016 | 2/29/16 (received credible verbal |

---

[3] The chart OFCCP provided appropriately redacted the names of other subcontractors. For clarity, we reproduce the chart here using "Contractor #x" in place of redactions. (*See* PageID 1444.) There were four other contractors who reached three months' work in January 2016 who would have been listed below Baker DC on the chart. (*Id.*)

| | | | complaints followed by a formal complaint) |
|---|---|---|---|
| 9 | Contractor #9 | January 2016 | |
| 10 | Baker DC | January 2016 | 3/17/16 (received credible verbal complaints) |

According to Tom Wells, the Director of the OFCCP Baltimore District Office, OFCCP scheduled Grunley Construction first because it was the prime contractor. (PageID 1450.) Contractor #8 and Baker DC were scheduled for review next because OFCCP received "credible complaints of discrimination." (*Id.*) Contractors #2 and #3 were scheduled after that "because they were the next contractors to reach three months of work on the Mega Project." (*Id.*) "Mr. Wells explained that OFCCP schedules contractors for whom it receives credible complaints out of order because such companies are of concern to OFCCP and its procedures." (*Id.*) "OFCCP has never received credible complaints of discrimination against a contractor and not moved them up the list." (PageID 1450–51.)

Although no "formal complaints" had been filed with OFCCP regarding Baker DC, Mr. Wells found the complaints made at and shortly after the outreach event "to be credible based on the fact that OFCCP received the information from several people and there was specificity to the complaints." (PageID 1451.) He defined "credible" to mean "good reason to believe that the statements could be true." (*Id.*) Mr. Wells acknowledged that he did not speak to any of the oral complainants, did not make any notes at the time of the complaints, and "does not know if any of the complainants, besides one, worked for" Baker DC. (PageID 1452.) Mr. Wells did not investigate the complaints at the time because "such determination would have been done through the compliance review OFCCP sought to conduct." (*Id.*)

OFCCP notified Baker DC it had been selected for compliance review, and Baker DC's attorney contacted Mr. Wells "to obviate the need for an entrance conference." (PageID 1442.)

At OFCCP's request, Baker DC's attorney arranged for an OFCCP compliance officer to interview Baker DC's Corporate Compliance Manager and two other managers via telephone. (*Id.*) OFCCP then requested specific documents[4] "as part of an on-site review and on-site employee interviews to be conducted," but Baker DC—through counsel—denied those requests. (*Id.*) OFCCP issued a "Notice to Show Cause" for its denial of access to its Washington, D.C. worksites, but Baker DC refused to allow entrance. (*Id.*)

### B. Procedural Posture

On January 13, 2017, OFCCP filed a complaint with the United States Department of Labor, Office of Administrative Law Judges, alleging that Baker DC refused to supply records and permit an on-site compliance review in violation of Executive Order 11246, Section 503 of the Rehabilitation Act of 1973, 29 U.S.C. § 793, and VEVRA, 38 U.S.C. § 4212. The ALJ conducted a hearing on May 23, 2017, and issued a Recommended Decision and Order Enforcing Onsite Review. (Doc. 9-2 at PageID 1440–61.) The ALJ resolved all legal issues in OFCCP's favor, and concluded that an onsite compliance review had begun on May 11, 2016, with OFCCP's telephone interview of Baker DC's managers. (PageID 1458.) Baker filed exceptions to the ALJ's Recommended Decision before the Department of Labor's Administrative Review Board. (PageID 1505–33.) The Administrative Review Board did not issue a final order within 30 days of the time for filing exceptions so the ALJ's Recommended Decision and Order became a final administrative order on the 31st day, pursuant to 41 C.F.R. § 60-30.37. Baker then appealed the final administrative order to this Court pursuant to the APA. This matter is now before the Court on Plaintiff's and Defendants' Motions for Summary Judgment (Docs. 12 and 13).

---

[4] The requested documents included an employee roster, list of active projects, payroll records, and applicant tracking data. (PageID 1442, fn. 5.)

## II. STANDARD OF REVIEW

When reviewing a final administrative order under the APA, "the usual rules governing summary judgment do not apply." *Integrity Gymnastics & Pure Power Cheerleading, LLC v. U.S. Citizenship and Immigration Servs.*, 131 F.Supp.3d 721, 725 (S.D. Ohio 2015) (citing *City of Cleveland v. Ohio*, 508 F.3d 827 (6th Cir. 2007)). Rather, a district court is to determine only whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(a)(2). "A determination of whether an agency's action was arbitrary, capricious, or an abuse of discretion must be made on the basis of the administrative record." *Integrity Gymnastics*, 131 F.Supp.3d at 726; 5 U.S.C. § 706; *Trinity Industries, Inc. v. Occupational Safety and Health Review Comm'n.*, 16 F.3d 1455 (1994). "[O]ur review of the ALJ's factual determinations is limited to determining whether those determinations are supported by substantial evidence on the record as a whole—not whether there was substantial evidence in the record for a result other than that arrived at by the ALJ." *Steeltech, Ltd. v. United States E.P.A.*, 273 F.3d 652, 657 (6th Cir. 2001). The Court reviews "questions of law *de novo*, though some deference may be owed where the agency is reasonably interpreting the statutes it is charged with administering." *R/T 182, LLC v. F.A.A.*, 519 F.3d 307, 309 (6th Cir. 2008)

## III. ANALYSIS

### A. Fourth Amendment Right to be Free from Unreasonable Searches and Seizures

Plaintiff appeals the ALJ's Order Enforcing Onsite Review alleging that the warrantless search violates Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures. Defendants counter that Plaintiff was selected for review using a neutral administrative

plan applicable to all subcontractors working on federally-funded mega construction projects, and, therefore, the Fourth Amendment requirements have been satisfied.

"[T]he Fourth Amendment prohibition against unreasonable searches protects against warrantless intrusions during civil as well as criminal investigations." *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 312, 98 S.Ct. 1816 (1978). "The businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." *Id.* However, "probable cause in the criminal law sense is not required." *Id.* at 320. Rather, administrative probable cause may be based on either "specific evidence of an existing violation" or on a showing that "reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular establishment." *Barlow's*, 436 U.S. at 325. A business chosen for inspection "on the basis of a general administrative plan for the enforcement of the Act derived from neutral sources . . . would protect an employer's Fourth Amendment rights." *Trinity Indus., Inc. v. Occupational Safety and Health Review Comm'n.*, 16 F.3d 1455, 1460 (6th Cir. 1994) (quoting *Barlow's*, 436 U.S. at 320–21). Thus, "[a] permissible administrative plan relies on 'either random selection or selection by relevant statistics that have no individual human component for the reason that searches flowing from these types of plans could not be the product of an agency's arbitrary decision.'" *Eng'g. & Mfg. Servs., LLC v. Ashton*, 387 Fed. App'x. 575, 585 (6th Cir. 2010) (citing *Trinity Indus.*, 16 F.3d at 1463 (Batchelder, J., concurring)).

The key requirement, as the parties agree, is that the administrative plan be "derived from neutral sources." *See Trinity Ind.,* 16 F.3d at 1460. "Because administrative and legislative guidelines ensure that employers selected for inspection pursuant to *neutral administrative plans* have not been chosen simply for the purpose of harassment, courts have held that administrative

plan searches may properly extend to the entire workplace." *Id.* (citing *Donovan v. Sarasota Concrete Co.*, 683 F.2d 1061, 1068 (11th Cir. 1982) (emphasis added)).

An administrative plan that selects companies for inspection based solely on working on a federally-funded contract for three months would be "derived from neutral sources." To the contrary, a plan triggered by an employee complaint would not meet the neutrality requirement. *Trinity Industries*, 16 F.3d at 1460. The issue here, then, is whether a plan that selects companies for inspection based on the neutral criteria of three months' work loses the required neutrality by inspecting first those companies against whom a "credible complaint" has been made. The Court concludes that the answer to that question depends on whether all of the eligible companies are actually inspected.

In the case at bar, OFCCP uses neutral selection criteria—three months' work on a MCP—to compile a list of contractors eligible for full compliance review. Those companies are inspected based on the date upon which each contractor reaches the three months' work mark. At that point the process is still neutral. However, an individual enforcement officer moves any contractors against whom a "credible complaint" has been made to the earliest possible inspection dates. (PageID 1450–52.)

If, as in *Indus. Steel Prod. Co. v. Occupational Safety & Health Admin.*, 845 F.2d 1330, 1334 (5th Cir. 1988), "[a]ll firms within a cycle will be inspected in the space of several months in any case," then "[r]earranging their order within the cycle is not discriminatory." However, the facts of this case—as determined by the ALJ—do not demonstrate that all subcontractors within a project will ultimately be inspected. To the contrary, OFCCP's brief acknowledges that it "has not yet had the resources available to schedule all subcontractors who had worked for three or more months on the St. Elizabeths project." (PageID 1661.) Indeed, the evidence before

the ALJ indicated that only four of the 13 eligible subcontractors had been scheduled for review. (PageID 1444.)

This case, therefore, is similar to *Eng'g. & Mfg. Servs.*, 387 Fed. App'x. at 575. There, a legislative plan to ensure fire safety called for inspection of commercial buildings annually—a neutral source requirement. However, the evidence indicated that while annual inspections were a goal, only a small number of commercial buildings were actually inspected annually due to limited resources, leaving enforcement officers to select the specific buildings to be inspected each year. *Id.* at 585. The Court concluded, "[T]he Fire Department's administrative plan for annual inspections has human input and components and is thus not neutral." *Id.*

In the case at bar, OFCCP—like the Fire Department in *Engineering & Mfg. Services*—has a laudable goal and a facially neutral administrative plan. However, because neither OFCCP nor the Fire Department in *Engineering & Mfg. Servs.* has the resources to inspect every company that qualifies for a compliance review, the order in which the businesses are scheduled for inspection actually determines whether the business will be selected for inspection at all. OFCCP bases the order on which a contractor will be inspected—once it has qualified for inspection by working three months on an MCP—entirely on an enforcement officer's determination that a "credible complaint" has been filed against it. (PageID 1450–51.) An individual enforcement officer moves any contractors against whom a "credible complaint" has been made (whether that complaint is formal or informal, oral or written, verified or unverified, from an employee or an outsider, or before or after the contract was awarded) to the earliest possible inspection dates, thereby effectively selecting the contractor for review. (PageID 1450–52.) In practice, the administrative officer in the field enjoys the "almost unbridled discretion . . . as to when to search and whom to search," that the United States Supreme Court sought to limit

in *Barlow's*. Accordingly, OFCCP's administrative plan—as administered—is not sufficiently neutral to comply with Fourth Amendment requirements, and the Plaintiff is entitled to summary judgment on this issue.

### B. The Paperwork Reduction Act Does Not Apply

Plaintiff's second count alleges that OFCCP's request to review documents violated the Paperwork Reduction Act ("PRA"), 44 U.S.C. § 3501, *et seq.* The PRA "gives the Office of Management and Budget the responsibility for ensuring that certain agency information requests are not unduly burdensome." *United Space Alliance, LLC v. Solis*, 824 F.Supp. 2d 68, 94 (D.D.C. 2011). The PRA provides, in relevant part:

> **(a)** Notwithstanding any other provision of law, no person shall be subject to any penalty for failing to comply with a collection of information that is subject to this subchapter if--
> **(1)** the collection of information does not display a valid control number assigned by the Director in accordance with this subchapter; or
> **(2)** the agency fails to inform the person who is to respond to the collection of information that such person is not required to respond to the collection of information unless it displays a valid control number.

44 U.S.C.A. § 3512(a). The PRA specifically exempts agency administrative actions or investigations involving specific entities. 44 U.S.C.A. § 3518(c)(1)(B)(ii).

Quite simply, OFCCP's document requests are not "a collection of information" within the meaning of the PRA. OFCCP attempted to begin the administrative audit as usual where a "compliance officer interviews the CEO or facility director and HR personnel and asks for records pertaining to employment activity." (PageID 1449.) OFCCP District Director "wrote an email requesting several items from [Baker DC]; the document request was made by email because [Baker DC] notified OFCCP that there would not be anyone at the physical location and so the onsite phase of the review was initiated telephonically." (PageID 1452.) An OFCCP

10

compliance officer "conducted a 'virtual' onsite via telephone on May 11, 2016 during which she interviewed" Baker DC management and human resources personnel. (PageID 1449.) The compliance officer requested specific documents during the May 11, 2016 interview "because [Baker DC] told us not to come onsite." (*Id.*)

Baker DC makes much of the fact that an "onsite" review never began because OFCCP personnel did not physically enter its property, but that argument is irrelevant to its PRA claim. There is no question from the record before the ALJ that OFCCP requested the documents specifically of Baker DC as part of its attempted administrative compliance review. Thus, the PRA does not apply, and the Defendants are entitled to summary judgment on Plaintiff's PRA claim.

## IV. CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment, (Doc. 12), is **DENIED** as to Plaintiff's Fourth Amendment claim and **GRANTED** as to Plaintiff's PRA Claim. The Plaintiff's Motion for Summary Judgment, (Doc. 13), is **GRANTED** on the Fourth Amendment claim and **DENIED** on the PRA claim.

**IT IS SO ORDERED**.

Dated: April 6, 2018            S/Susan J. Dlott_____
                                Judge Susan J. Dlott
                                United States District Court